UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
BAUTISTA CABRERA, individually and
on behalf of all others similarly situated,

                Plaintiff,

      -against-

SANTIAGO CANELA, individually and as
officer, shareholder, and/or principal of
ESTRELLA LATINA CORP., d/b/a
ESTRELLA LATINA; ESTRELLA LATINA
CORP., d/b/a ESTRELLA LATINA; JOSE M.
RAMOS, individually and as officer,
shareholder, and/or principal of ESTRELLA
LATINA DEL CARIBE INC.; and
ESTRELLA LATINA DEL CARIBE INC.,

              Defendants.
--------------------------------------------------------X

                        REPORT AND
                        RECOMMENDATION
                        14 CV 4874 (LDH)(RML)

LEVY, United States Magistrate Judge:

        By order dated June 28, 2018, the Honorable LaShann DeArcy Hall, United

States District Judge, referred plaintiff's motion for a default judgment against defendants

Santiago Canela ("Canela"), Estrella Latina Corp. ("Estrella Latina"), and Estrella Latina Del

Caribe ("Del Caribe") to me for report and recommendation.  After settlement negotiations broke

down, I held an inquest hearing on February 13, 2019.  (See Transcript of Hearing, dated Feb.

13, 2019 ("Tr."), Dkt. No. 55.)  For the reasons stated below, I respectfully recommend that

plaintiff's motion be granted as to Canela and Estrella Latina, but denied as to Del Caribe, and

that plaintiff be awarded $66,991.64 in damages, plus pre-judgment and post-judgment interest.

I further recommend that plaintiff's claims against Jose M. Ramos ("Ramos") and Del Caribe be

dismissed for failure to state a claim.

## BACKGROUND AND FACTS

Plaintiff Bautista Cabrera ("plaintiff") commenced this wage and hour action on August 15, 2014, asserting claims against Canela and Estrella Latina under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and New York Labor Law ("NYLL"). (Complaint, dated Aug. 15, 2014 ("Compl."), Dkt. No. 1.)  On June 20, 2016, I granted plaintiff's unopposed motion to amend the complaint to add the new owners of the Estrella Latina Restaurant (the "Restaurant"), Ramos, Del Caribe, and John Does 1–5 as defendants.[1] (Minute Entry, dated June 20, 2016; Amended Complaint, dated June 24, 2016 ("Am. Compl."), Dkt. No. 25.)

Defendants Estrella Latina and Del Caribe are both alleged to be domestic corporations, with their principal place of business at 37-07 104th Street in Queens, New York. (Am. Compl. ¶¶ 10, 16.)  Defendant Canela is alleged to be the owner, officer, director, shareholder, and/or principal of Estrella Latina.  (Id. ¶ 13.)  Defendant Ramos is alleged to be the owner, officer, director, shareholder, and/or principal of Del Caribe.  (Id. ¶ 19.)  According to the amended complaint, Ramos and Del Caribe purchased the Restaurant from Canela and Estrella Latina on July 10, 2014, and continue to operate it under the name "Estrella Latina."  (Id. ¶¶ 61– 62.)  Plaintiff testified that he worked as a dishwasher and deliveryman at the Restaurant from

---

[1] John Does 1–5 are described in the amended complaint as "the currently unknown parent, subsidiary, or affiliate entities and/or individuals who jointly employed Plaintiff and those similarly situated during the relevant time periods."  (Amended Complaint, dated June 24, 2016 ("Am. Compl."), Dkt. No. 25, ¶ 22.)  The John Doe defendants have since been dismissed from this case.  (See Report and Recommendation, dated Apr. 19, 2018 ("Apr. 19 R&R"), Dkt. No. 43 (recommending, inter alia, the dismissal of the John Doe defendants); Order Adopting Report and Recommendation, dated May 24, 2018.)

April 1, 2011 to December 3, 2013.  (See Tr. at 3:18–22; 4:1–6; Affidavit of Bautista Cabrera

("Cabrera Aff."), sworn to July 15, 2015, Dkt. No. 16, ¶ 6.)

Ramos filed an answer to the amended complaint on August 3, 2016.  (See

Answer to Amended Complaint, dated Aug. 3, 2016, Dkt. No. 30.)  After an initial default in

May 2015 (see Clerk's Entry of Default, dated May 12, 2015, Dkt. No. 12), Canela and Estrella

Latina later appeared through attorney Ferris Turner, Esq.  (See Letter of Robert J. Valli, Jr.,

Esq., dated Sept. 16, 2015, Dkt. No. 20.)  On October 25, 2017, I granted Mr. Turner's motion to

withdraw as counsel[2] and ordered Canela and Estrella Latina to obtain new counsel by December

8, 2017.  (Order, dated Oct. 25, 2017.)  I indicated that if Estrella Latina failed to obtain new

counsel by then, it would likely be deemed in default, as a corporation cannot represent itself in

federal court.  (Id.)  If Canela failed to obtain new counsel, I ordered him to advise the court by

that date whether he intended to defend the claims in this action, and indicated that his failure to

do so would result in a recommendation that he be found in default.  (Id.)  Neither party advised

the court of their intentions by December 8, 2017, nor did any attorney file a notice of

appearance on their behalf.  There was no further response or docket activity from either party.

On April 19, 2018, I issued a report and recommendation in which I

recommended that a default be entered against Canela, Estrella Latina, and Del Caribe.[3]  (Report

and Recommendation, dated Apr. 19, 2018, Dkt. No. 43.)  I further recommended that the John

Doe defendants be dismissed from the case, as there had been no effort to identify them.  (Id.)

---

[2] The facts leading up to Mr. Turner's motion to withdraw are described in greater detail in my
April 19, 2018 report and recommendation.  (See Apr. 19 R&R at 2–3.)

[3] At that point, Del Caribe had not appeared.  As discussed infra, Del Caribe later appeared
through attorney John Garzon, Esq. (see Notice of Appearance, dated Sept. 17, 2018, Dkt. No.
49), but it never answered or otherwise moved with respect to the amended complaint.

On May 24, 2018, Judge DeArcy Hall adopted my report and recommendation and ordered plaintiff to move for a default judgment against Canela, Estrella Latina, and Del Caribe. (Order Adopting Report and Recommendation, dated May 24, 2018.)

Plaintiff moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a) on June 15, 2018. (Request for Certificate of Default, dated June 15, 2018, Dkt. No. 45.) The Clerk of the Court noted the defaults of Canela, Estrella Latina, and Del Caribe on June 18, 2018. (Clerk's Entry of Default, dated June 18, 2018, Dkt. No. 46.) On June 25, 2018, plaintiff moved for a default judgment against the three defaulting defendants. (Motion for Default Judgment, dated June 25, 2018, Dkt. No. 47.) Judge DeArcy Hall referred plaintiff's motion to me. (Order Referring Motion, dated June 28, 2018.)

On August 16, 2018, I held a status conference with Matthew Berman, Esq., counsel for plaintiff, and John Garzon, Esq., counsel for Ramos. (Minute Entry, dated Aug. 16, 2018.) Counsel requested the opportunity to explore settlement. (Id.) I ordered Mr. Garzon to advise no later than August 23, 2018 whether he would be representing Del Caribe and instructed that, if Del Caribe engaged him, he should file a notice of appearance by that date and move expeditiously to vacate the default against Del Caribe. (Id.) Additionally, I advised counsel that if the case did not settle prior to the next conference, on October 5, 2018, I would schedule a hearing on plaintiff's motion for a default judgment at that time. (Id.)

On September 14, 2018, the parties submitted a status report stating that they were engaged in multi-lateral settlement discussions and requesting an additional thirty days to explore settlement before scheduling a hearing on plaintiff's motion. (Letter of Matthew L. Berman, Esq., dated Sept. 14, 2018, Dkt. No. 48.) On September 17, 2018, Mr. Garzon filed a notice of appearance on behalf of Del Caribe. (Notice of Appearance, dated Sept. 17, 2018, Dkt.

No. 49.)  However, Del Caribe never answered or otherwise moved with respect to the amended complaint, and no motion was made to vacate the default against it.  I granted the request for an extension of time and adjourned the conference scheduled for October 5, 2018 to October 23, 2018.  (See Order, dated Sept. 17, 2018.)

During the October 23, 2018 conference, counsel advised that they had reached a partial settlement involving plaintiff, Ramos, and Del Caribe.  (Minute Entry, dated Oct. 24, 2018.)  I ordered the parties to submit the partial settlement agreement for a fairness review under Cheeks v. Freeport Pancake House, 796 F.3d 199 (2d Cir. 2015), by November 27, 2018. (Id.)  Additionally, I ordered plaintiff's counsel to advise by that date whether plaintiff wished to pursue the motion for a default judgment against Canela and Estrella Latina.  (Id.)  That deadline passed without submission of the partial settlement agreement or any communication from plaintiff's counsel as to whether plaintiff wished to pursue the motion.

On January 4, 2019, I ordered the parties to submit a status report on or before January 11, 2019 and advised that failure to do so would result in a recommendation that the motion for a default judgment be dismissed for failure to prosecute and the partial settlement agreement rejected.  (Order, dated Jan. 4, 2019.)  On January 11, 2019, plaintiff's counsel submitted a status report stating that the parties were unable to reach agreement on a stipulation to submit to the court and that plaintiff would be pursuing his motion for a default judgment. (Letter of Matthew L. Berman, Esq., dated Jan. 11, 2019, Dkt. No. 51.)  Plaintiff's counsel also advised that he had attempted to contact Mr. Garzon's office to obtain adequate assurances that the settlement would be finalized, but was unable to do so.  (Id.)  On February 13, 2019, I held an inquest hearing where I heard testimony from plaintiff, through a Spanish interpreter.  (See Tr.)  No defendant appeared at the inquest or otherwise contacted the court.  (See id.)

5

Plaintiff asserts claims under the FLSA for unpaid minimum wages and overtime. (Am. Compl. ¶¶ 65–74.)  Plaintiff also seeks recovery under the NYLL for unpaid minimum wages, unpaid overtime, unlawful retention of gratuities, failure to pay spread of hours wages, and failure to provide wage notices and wage statements.  (Id. ¶¶ 75–99.)  Plaintiff seeks back pay, liquidated damages, pre- and post-judgment interest, attorney's fees, and costs.  (Plaintiff's Memorandum of Law in Support of Motion for Default Judgment, dated June 25, 2018 ("Pl.'s Mem."), Dkt. No. 47–2; Am. Compl.)

## DISCUSSION

### A.  Liability

#### 1.  Canela and Estrella Latina

A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability."  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  Once a default is entered, the court "is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor."  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  The court must also "determine whether [the plaintiff's] allegations establish [the defendants'] liability as a matter of law."  Id.

Plaintiff has sufficiently pleaded factual allegations that give rise to liability against Canela and Estrella Latina for unpaid minimum wages and overtime under the FLSA and the NYLL.  (See Am. Compl. ¶¶ 40–53.)  He has also sufficiently pleaded claims for unlawful retention of gratuities, unpaid spread of hours wages, and failure to provide wage statements

under the NYLL. [4]  (Id. ¶¶ 44–45, 54, 55, 60.)  The extent to which he can recover damages from

Canela and Estrella Latina based upon these violations depends on whether: (1) his claims were

timely; (2) he is a covered employee under the FLSA and the NYLL; and (3) Canela and Estrella

Latina were plaintiff's employers under the FLSA and NYLL.

### a.   Timeliness

For plaintiff's claims to be timely under the FLSA, they must have arisen within

the two years prior to the filing of the complaint, or—for willful violations—within the three

years prior.  29 U.S.C. § 255(a).  Here, plaintiff has pleaded willful violations of the Act (Am.

Compl. ¶¶ 68, 73, 78, 83, 88, 93, 98), and defendants have, by virtue of their default, waived the

affirmative defense of statute of limitations.  See Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d

76, 87 (E.D.N.Y. 2012) (citing Day v. McDonough, 547 U.S. 198, 202 (2006); Davis v. Bryan,

810 F.2d 42, 44 (2d Cir. 1987); Archie v. Grand Cent. P'ship, 997 F. Supp. 504, 536 (S.D.N.Y.

1998)).  Plaintiff alleges that he was employed by Canela and Estrella Latina, and that

underpayment of wages occurred, between April 1, 2011 and December 3, 2013.  (See Tr. at

3:18–22; 4:1–6.)  This action was commenced on August 15, 2014.  (See Compl.)  Therefore,

those portions of plaintiff's FLSA claims arising between April 1, 2011 and August 15, 2011 are

untimely.  However, plaintiff may nevertheless recover for underpayment of wages during this

period if his NYLL claims are timely. [5]

For plaintiff's claims to be timely under the NYLL, they must have arisen within

the six years prior to the filing of the complaint.  See N.Y. LAB. L. §§ 198(3); 663(3).  Because

---

[4] As discussed infra, plaintiff does not have a viable claim for failure to provide wage notices.

[5] Plaintiff may not receive "double recovery" of unpaid wages under both the FLSA and the
NYLL.  Hernandez v. Jrpac Inc., 14 CV 4176, 2016 WL 3248493, at *31 (S.D.N.Y. June 9,
2016).

plaintiff alleges that he was employed by Canela and Estrella Latina and that underpayment of wages, unlawful retention of gratuity, unpaid spread of hours wages, and wage statement violations occurred after April 1, 2011, his claims under the NYLL are timely.

### b.   Employee Coverage under the FLSA

Because the minimum wage and overtime provisions of the FLSA and the NYLL apply only to employees of covered employers, a plaintiff in a wage and hour action must show that he or she was defendants' employee, and that defendants were employers subject to the coverage of each statute.  For purposes of the FLSA, an employee is "any individual employed by an employer," meaning any individual whom an employer "suffer[s] or permit[s] to work." 29 U.S.C. §§ 203(e)(1), (g).  Absent a statutory exemption, such individuals are protected by the FLSA, so long as they work for a covered employer.  An employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  Person is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."  29 U.S.C. § 203(a).  In addition, for employees to be covered by the FLSA, they must show either that their employer was an enterprise engaged in interstate commerce *or* that their work as employees regularly involved them in interstate commerce.  See 29 U.S.C. § 207(a).

Here, plaintiff has adequately pleaded that he was an employee, insofar as he alleges he was hired to work as a dishwasher and deliveryman at the Restaurant, worked five days per week, and was paid in cash each week.  (Am Compl. ¶¶ 41, 50; Tr. at 17:6–13.)  To determine whether a party qualifies as an "employer" under both the FLSA and NYLL, the relevant inquiry is "whether the alleged employer possessed the power to control the workers in question, . . . with an eye to the economic reality presented by the facts of each case."  Herman v.

RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).  When examining the "economic reality" of a particular situation, courts will evaluate various factors, none of which, individually, is dispositive.  Id.  These factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."[6]  Id.  Further, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, [and is therefore] jointly and severally liable under the FLSA for unpaid wages." Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002).

Plaintiff testified at the inquest that he was hired to work at the Restaurant on April 1, 2011, and that his direct supervisor was a woman named Rosmaili who was employed by Estrella Latina.  (Tr. at 3:18–22; 18:5–16.)  He further testified that it was Rosmaili who hired him, fired him, paid him, set his rate of pay, and set his work schedule.  (See id. at 15:2–25; 16:1–8; 18:5–16; 21:8–13.)  He alleges in the amended complaint that Canela also had the power to do those things, and that Canela "controlled [Estrella Latina's] actual day-to-day operations and management."  (Am. Compl. ¶ 15.)  Therefore, I find that plaintiff has adequately alleged that Canela and Estrella Latina were his employers.

Plaintiff alleges that, at all relevant times, Estrella Latina had gross receipts of greater than $500,000 and that its employees were engaged in interstate commerce.  (Am. Compl. ¶¶ 11–12.)  Thus, he alleges that he was a covered employee under the FLSA.  (Id. ¶ 8.)

---

[6] "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA."  Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011); see also Oaxaca v. Hudson Side Cafe Inc., No. 13 CV 2698, 2018 WL 4859152, at *8 (E.D.N.Y. Oct. 8, 2018); Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015).

This allegation is, on its face, conclusory, insofar as it restates the statutory definition of enterprise coverage without providing additional facts.  The only supporting factual allegation for this is that Estrella Latina's employees "handle goods that have been moved in interstate commerce."  (Id. ¶ 12.)  It can be further inferred from plaintiff's role as a deliveryman that he regularly handled food.  Moreover, plaintiff testified at the inquest that his duties included receiving beverage deliveries and putting them away.  (Tr. at 4:10–12, 5:1–5.)

Multiple courts in this district have held that similarly conclusory allegations of enterprise coverage may be accepted on a motion for default judgment where it may be inferred from the type of business enterprise that it was engaged in interstate commerce.  See, e.g., Remache v. Mac Hudson Grp., No. 14 CV 3118, 2018 WL 4573072, at *4 (E.D.N.Y. Sept. 7, 2018), report and recommendation adopted, 2018 WL 4568860 (E.D.N.Y. Sept. 24, 2018) (holding that "the enterprise that employed plaintiffs—i.e. a construction business—is a type that is typically involved in interstate commerce" and that plaintiffs had therefore sufficiently established that they were covered employees under the FLSA); Huerta v. Victoria Bakery, No. 10 CV 4754, 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012) ("[T]he original complaint . . . provides a sufficient basis . . . for inferring the requisite interstate commerce connection under the sensible approach adopted by other judges in this district.  The complaint alleges that plaintiffs . . . were employed as bread makers in a Brooklyn-based bakery with over half a million dollars in annual sales.  It is inconceivable that some of the bread-making materials used by plaintiffs did not originate out of state or that the bakery did not sell its products outside the State of New York."); Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) ("Because even local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced

in interstate commerce, the test is met if Plaintiffs merely handled supplies or equipment that originated out-of-state . . . . The Court finds it logical to infer here that the cleaning supplies utilized by the Plaintiffs originated outside of New York.  Plaintiffs' Complaint, therefore, fairly alleges that the Defendants are an 'enterprise engaged in commerce.'  Consequently, the Court finds that Plaintiffs are covered by the FLSA.") (internal citations and quotation marks omitted).[7] I agree with those courts that have adopted this approach, and therefore find that the enterprise that employed plaintiff was involved in interstate commerce.  Plaintiff has therefore sufficiently established that he is a covered employee under the FLSA.

2.   Ramos & Del Caribe

Plaintiff alleges that Ramos and Del Caribe purchased the Restaurant from Canela and Estrella Latina on July 10, 2014, over seven months after his employment at the Restaurant ended.  (See Am. Compl. ¶¶ 61–62.)  Therefore, they cannot be held liable as plaintiff's employers.  Whether plaintiff can recover damages from Ramos and Del Caribe for violations that occurred prior to their acquisition of the Restaurant depends on whether they can be held liable under the doctrine of successor liability.  See, e.g., Xue Ming Wang v. Abumi Sushi Inc., 262 F. Supp. 3d 81, 86–87 (S.D.N.Y. 2017) (applying doctrine of successor liability to determine whether purchasers of restaurant can be held liable for wage and hour violations that occured prior to sale); Bautista v. Beyond Thai Kitchen, Inc., 14 CV 4335, 2015 WL 5459737, at *1 (S.D.N.Y. Sept. 17, 2015) (same).

---

[7] But see Perez v. Queens Boro Yang Cleaner, Inc., No. 14 CV 7310, 2016 WL 1359218, at *4 (E.D.N.Y. Mar. 17, 2016) ("While some judges in this district disagree, and have granted default judgments notwithstanding a similar lack of specificity in other cases, I conclude that requiring non-conclusory allegations is more consonant with applicable case law concerning pleading requirements, and that it does not frustrate the FLSA's remedial purpose to require a plaintiff seeking the statute's protection to explain in her pleading just what it is about her employer's business that brings it within the law's ambit.") (footnote omitted).

Plaintiff does not plead successor liability in the amended complaint.  (See Am. Compl.)  Moreover, when asked about successor liability at the inquest, plaintiff's counsel responded: "[w]e're in an absence of information . . . as to that because there has been no discovery in this case."  (Tr. at 20:16–22.)  Therefore, I find that plaintiff has not sufficiently alleged or established successor liability and cannot hold Ramos or Del Caribe liable for damages.  For this reason, I respectfully recommend dismissing the claims against Ramos and Del Caribe for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[8]

### B.  Damages

Once the court has determined that the defaulting defendants are liable, "the court must conduct an inquiry to establish damages to a 'reasonable certainty.'"  Gunawan, 897 F. Supp. 2d at 83 (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).  "[T]he quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."  Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974).  "The burden is on the plaintiff to establish [his] entitlement to recovery."  Bravado Int'l Group Merch. Servs. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009).

### 1.  Hours Worked

"As a preliminary matter, when an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiff['s] recollection and estimates of hours worked are presumed to be correct.'"  Gunawan, 897 F. Supp. 2d at 88 (quoting Zeng Liu v. Jen Chu Fashion Corp., No. 00

---

[8] Ramos is not subject to this motion for a default judgment, as he has answered the amended complaint.  (See Answer to Amended Complaint, dated Aug. 3, 2016, Dkt. No. 30.)  Nevertheless, I find that plaintiff has failed to state a claim against Ramos for the same reasons that he has failed to state a claim against Del Caribe.

CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)); see also Kim v. Kum Gang, Inc., No. 12 CV 6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015) (where an employer fails to maintain records of wages and hours, plaintiffs "need only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference") (internal quotation marks and citations omitted); Hart v. Rick's Cabaret Int'l, Inc., 60 F. Supp. 3d 447, 466 (S.D.N.Y. 2014) ("It would be manifestly unfair to allow employers to avoid, or reduce, their liability simply because they kept shoddy records.").  Here, because Canela and Estrella Latina have defaulted and no employment records have been produced, the court will presume the accuracy of plaintiff's recollection and estimates of hours worked, as stated in his testimony at the inquest.

Plaintiff testified that he worked five days per week: Wednesday, Thursday, Friday, Saturday, and Sunday.  (Tr. at 4:20–22.)  He further testified that, while his normal weekday hours were from 6:00 p.m. to 4:00 a.m., he would typically work until either 6:00 a.m. or 7:00 a.m. on Saturdays and Sundays, depending on how long it took to clean up after all patrons had left the Restaurant.  (Id. at 4:15–18, 8:2–8.)  He explained that while he was theoretically entitled to one half-hour break per shift, he was expected to end his break immediately if a delivery order came in.  (Id. at 9:6–11.)  Thus, in practice, he had no breaks. (Id.)  He also testified that he was injured and unable to work for one week during his employment.  (Id. at 16:14–18.)  He therefore seeks damages for 139 workweeks.  (See Damages Calculations, Ex. 2, filed Feb. 13, 2019, Dkt. No. 54.)

2.  Minimum Wage Compensation

Under both the FLSA and the NYLL, employees must be paid at least a minimum hourly wage for each hour that they work.  See 29 U.S.C. § 206(a); N.Y. LAB. LAW § 652.  The

federal minimum wage does not preempt the state minimum wage, see 29 U.S.C. § 218(a), and a plaintiff may recover under whichever statute provides the highest measure of damages. Wicaksono v. XYZ 48 Corp., No. 10 CV 3635, 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), report and recommendation adopted, 2011 WL 2038973 (S.D.N.Y. May 23, 2011). Throughout plaintiff's period of employment, the New York state minimum wage and the federal minimum wage were both $7.25 per hour. See 29 U.S.C. § 206(a)(1); https://labor.ny.gov/stats/ minimum_wage.shtm. Thus, I employ that rate to calculate damages.

Plaintiff testified that he was paid a flat rate of $250 per week for the duration of his employment, regardless of the number of hours worked, that he worked an average of fifty-five hours per week.[9] (See Tr. at 4:15–18, 8:2–8, 13:22–24.) This amounts to an average hourly wage of $4.55 per hour, which is below the statutory minimum.

Additionally, in his sworn affidavit and amended complaint, plaintiff states that he earned an average of $90 per week in tips, but that when customers tipped via credit card, defendants would retain approximately twenty-five percent of the tip. (See Cabrera Aff. ¶ 9; Am. Compl. ¶ 44.) Both the FLSA and the NYLL contain "tip credit" provisions, which "permit an employer to pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage." Inclan v. N.Y. Hosp. Grp., 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015). Here, even if plaintiff had been permitted to keep the full $90 in tips he earned each week, he still

---

[9] Plaintiff testified that he worked ten hours per day Wednesday through Friday, and that he worked either twelve or thirteen hours per day on Saturday and Sunday, depending on when patrons left the Restaurant. (See Tr. at 4:15–18, 8:2–8.) Therefore, I presume for purposes of these calculations that he worked an average of twelve and a half hours on Saturday and Sunday.

would have earned less than the minimum wage.[10]  Moreover, because defendants retained a portion of plaintiff's tips, they are not eligible for a tip credit under either statute and may not credit plaintiff's tips towards their minimum wage obligation.

To be eligible for a tip credit under the FLSA, an employer must "satisfy two conditions: (1) inform the employee of the 'tip credit' provision . . . and (2) permit the employee to retain all of the tips the employee receives." Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 287 (S.D.N.Y. 2011) (quoting Jin v. Pacific Buffet House, No. 06 CV 579, 2009 WL 2601995, at *4 (E.D.N.Y. 2009); citing Chung v. New Silver Palace Rest., 246 F. Supp. 2d 220, 228–29 (S.D.N.Y. 2002)).  "These two prerequisites . . . are strictly construed, and must be satisfied even if the employee received tips at least equivalent to the minimum wage." Copantitla, 788 F. Supp. 2d at 287 (quoting Chung, 246 F. Supp. 2d at 229) (internal quotation marks omitted).  Moreover, a violation of N.Y. LAB. LAW § 196-d, which prohibits an employer from retaining tips or gratuities received by employees, renders an employer ineligible to receive a tip credit under the NYLL.  See id. ("[D]efendants' violation of N.Y. Lab. Law § 196-d itself constitutes an independent and sufficient reason to find that defendants are not entitled to a tip credit.") (citing Lu v. Jing Fong Rest., Inc., 503 F. Supp. 2d 706, 711 (S.D.N.Y. 2007)); see also Marin v. Apple-Metro, Inc., 12 CV 5274/13 CV 1417, 2017 WL 4950009, at *24 (E.D.N.Y. Oct. 4, 2017) (same).

Plaintiff testified that defendants retained a portion of his tips, amounting to approximately $3 per day.  (Tr. at 10:25, 11:1–2.)  Therefore, defendants are not eligible for a tip credit under either the FLSA or the NYLL, and may not utilize plaintiff's tips to offset their

---

[10] If plaintiff had been able keep all of the tips he received, he would have earned $340 per week. Thus, his average hourly rate would have been $6.18 per hour ($340/55).

minimum wage damages.  As such, I presume for the purpose of calculating minimum wage damages that plaintiff earned $250 per week.  If plaintiff had been paid the minimum wage, he would have earned $398.75 per week ($7.25 x 55).  Thus, I find that plaintiff was underpaid by $148.75 per week and that he is entitled to $20,676.25 in unpaid minimum wage compensation ($148.75 x 139).

### 3. Overtime Compensation

Plaintiff is entitled to overtime compensation under both the FLSA and NYLL at the rate of one and one-half times his regular rate of pay for the hours he worked in excess of forty during a workweek.  See 29 U.S.C. § 207(a)(1); N.Y. COMP. CODES T. & RECS. tit. 12, § 142-2.2.  Plaintiff asserts that he never received overtime compensation during his employment at the Restaurant.  (See Am. Compl. ¶¶ 51–53; Tr. at 14:14–19.)  He is therefore entitled to recover fifty percent of the applicable minimum wage of $7.25 per hour for overtime hours worked during his employment.  See Jamarillo v. Banana King Rest. Corp., 12 CV 5649, 2014 WL 2993450, at *4 (E.D.N.Y. June 30, 2014).  Based on plaintiff's testimony, he worked an average of fifteen overtime hours per week.  (See Tr. at 4:15–18, 8:2–8.)  He is therefore entitled to $7,568.55 in unpaid overtime compensation ((15 x $3.63) x 139).

### 4. Retention of Gratuities

Plaintiff also claims that he is entitled to damages for unlawful retention of gratuities under N.Y. LAB. LAW § 196-d.  (Am. Compl. ¶¶ 85–89.)  That provision provides that "[n]o employer . . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."  N.Y. LAB. LAW § 196-d.  Plaintiff asserts that he earned an average of $90 in tips per week and that defendants retained twenty-five percent of tips paid via credit

16

card.  (Cabrera Aff. ¶ 9; Am. Compl. ¶ 44.)  At the inquest, he testified that he worked five days

per week and that defendants deducted an average of $3 from his tips each day.  (Tr. at 4:20–22,

10:25, 11:1–2.)  Therefore, I presume that the deductions amounted to $15 per week and find

that plaintiff is entitled to $2,085 in unlawfully retained gratuities ($15 x 139).

5.  <u>Spread of Hours</u>

Plaintiff further claims that he is entitled to unpaid spread of hours wages under

N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.4.  (Am Compl. ¶¶ 90–94.)  That provision

requires employers to pay employees "one hour's pay at the basic minimum hourly wage rate, in

addition to the minimum wage required in this Part for any day in which [ ] the spread of hours

exceeds 10 hours."  COMP. CODES R. & REGS. tit. 12, § 142-2.4.  "[T]he weight of authority in

this Circuit holds that '[a] limitation upon a plaintiff's eligibility to recover for spread-of-hours

pay is that the plaintiff not earn more than the [state] minimum wage.'"  <u>Tan v. Voyage Express

Inc.</u>, No. 15 CV 6202, 2017 WL 2334969, at *3 (E.D.N.Y. May 25, 2017) (quoting <u>Luna v. Gon

Way Constr.</u>, No. 16 CV 1411, 2017 WL 835321, at *11 (E.D.N.Y. Feb. 14, 2017), <u>report and

recommendation adopted</u>, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017)).  Because plaintiff

regularly worked more than ten hours per day and was paid less than the minimum wage, he is

entitled to an additional hour of compensation at the minimum wage rate of $7.25 per hour for

each shift that he worked more than ten hours.

Plaintiff testified that he worked more than ten hours on Saturdays and Sundays

throughout his employment.  (<u>See</u> Tr. at 8:2–8.)  Therefore, he is entitled to $2,015.50 in unpaid

spread of hours wages (($7.25 x 2) x 139).

6.  Liquidated Damages

Plaintiff requests liquidated damages under both the FLSA and the NYLL.  (See Damages Calculations.)  However, plaintiff cannot recover cumulative liquidated damages under both statutes for the same time period.  See Rana v. Islam, 887 F.3d 118, 119 (2d Cir. 2018) (per curiam).  When two forms of damages are available for the same violation, courts have generally awarded the higher of the two.  Man Wei Shiu v. New Peking Taste Inc., No. 11 CV 1175, 2014 WL 652355, at *13 (E.D.N.Y. Feb. 19, 2014).  The FLSA allows for liquidated damages awards equaling one-hundred percent of wages due.  See 29 U.S.C. § 260.  Prior to April 9, 2011, the NYLL provided for liquidated damages of up to twenty-five percent of wages due.  See Remache, 2018 WL 4573072, at *15.  It was then amended, effective April 9, 2011, to provide for liquidated damages equaling one-hundred percent of wages due.  Id.  Thus, an award of liquidated damages under the NYLL would be assessed at twenty-five percent of wages due for violations occurring before April 9, 2011 and one-hundred percent for violations occurring on and after April 9, 2011.  Id.  Nevertheless, since plaintiff can recover both prejudgment interest and liquidated damages under the NYLL, see N.Y. LAB LAW § 663, an award recovered under the NYLL will be greater than one recovered under the FLSA.

Under the NYLL, "liquidated damages are presumed unless defendants can show subjective good faith."  Zubair v. EnTech Eng'g, P.C., 900 F. Supp. 2d 355, 360 n.3 (S.D.N.Y. 2012); see N.Y. LAB. LAW § 663(1).  As defendants have defaulted, they have not established good faith to rebut the liquidated damages presumption.  Accordingly, I recommend that plaintiff be awarded $32,146.34 in liquidated damages, broken down as follows[11]:

---

[11] Terms in this table are abbreviated as follows: liquidated ("liq.") and compensatory ("compens.").

| Pre-4/9/2011 | | Post-4/9/2011 | | |
|---|---|---|---|---|
| Compens. Damages | 25% Liq. Damages | Compens. Damages | 100% Liq. Damages | Total Liq. Damages |
| $265.28 | $66.32 | $32,080.02 | $32,080.02 | $32,146.34 |

7. <u>Wage Notices</u>

Plaintiff further requests statutory damages for defendants' failure to

provide wage notices in compliance with New York's Wage Theft Prevention Act ("WTPA"),

which requires employers to "provide [their] employees, in writing . . . a notice containing . . .

the rate or rates of pay thereof, whether paid by the hour, shift, day, week, salary, piece,

commission, or other allowances."  N.Y. LAB. LAW § 195(1).  Beginning April 9, 2011, the

WTPA required employers to provide written wage notices "at the time of hiring, and on or

before February first of each subsequent year of the employee's employment with the employer."

N.Y. LAB. LAW § 195(1-a) (eff. Apr. 9, 2011 to Feb. 27, 2015).  By an amendment to the WTPA,

effective February 27, 2015, that provision changed to require employers to provide written

wage notices only "at the time of hiring."  2014 N.Y. LAWS ch. 537 § 1, <u>amending</u> N.Y. LAB.

LAW § 195(1-a).  Because plaintiff's work ended prior to that change, and because he

commenced this action prior to that change, the original version of the WTPA controls in this

case.

Plaintiff testified that he did not receive a wage notice when he was hired, and did

not receive any additional documentation regarding his wages at any point during his

employment.  (Tr. at 16:23–17:20.)  Because plaintiff was hired prior to the effective date of the

WTPA, he is not entitled to statutory damages for defendants' failure to provide a wage notice at

the time of his hiring.  <u>See, e.g.</u>, <u>Remache</u>, 2018 WL 4573072, at *16 ("It is clear that employees

who were hired prior to the effective date of the WTPA cannot recover statutory damages for an

19

employer's failure to provide wage notices at the time of hiring, as the WTPA does not apply retroactively.") (citing Inclan, 95 F. Supp. 3d at 501–02).  Moreover, he is not entitled to damages for defendants' failure to provide annual wage notices, as the WTPA did not provide for damages for annual wage notice violations during the time that the annual notice requirement was in effect.  See id. at *17 ("I agree with those courts that have held that no damages are available for annual wage notice violations, as the text of the statute is contrary to such a result. . . . Even though the Act, prior to the 2015 amendments, required annual wage notices, it did not provide that employees could recover civil damages for a violation of this requirement; only the New York Department of Labor could pursue such remedies.") (footnote omitted) (citation omitted); Martinez v. Alimentos Saludables Corp., 16 CV 1997, 2017 WL 5033650, at *20 (E.D.N.Y. Sept. 22, 2017) ("[T]he Court concludes that Section 198(1-b) does not provide for damages for annual wage notice violations.); Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 510 n.13 (S.D.N.Y. 2017) ("Although the statute extended a private cause of action to employees whose employers failed to provide an initial wage notice at their hire, it did *not* create a private cause of action for employees whose employers failed to furnish the annual notice in following years. . . . The NYLL's annual wage-notice requirement, then, was a right without a remedy.") (citations omitted) (internal quotation marks omitted).[12]

---

[12] But see Inclan v. N.Y. Hosp. Grp., 95 F. Supp. 3d 490, 502 (S.D.N.Y. 2015) ("However, the WTPA also required the Restaurant to provide annual notice of the tip credit to its employees on or before February 1, 2012.  It is undisputed that two of the plaintiffs . . . remained employed at the Restaurant after that date.  As the Restaurant did not provide them with WTPA-compliant wage notice statements, plaintiffs may recover statutory damages of $50 per work week during the time of their employment after that date.") (footnotes and internal citations omitted).

8.  Wage Statements

Plaintiff also requests statutory damages for defendants' failure to provide wage statements in compliance with the NYLL.  The WTPA requires employers to furnish each employee with a statement with every payment of wages—i.e., a paystub—that lists, inter alia, the dates of work covered by that payment of wages, the employer's address and telephone number, the applicable rate or rates of pay, applicable deductions, and any allowances claimed as part of the minimum wage.  N.Y. LAB. LAW § 195(3).  Plaintiff testified that he never received wage statements with his pay.  (Tr. at 17:11–17.)

Prior to February 27, 2015, "the WTPA entitled employees to recover statutory damages for violations of the wage statement requirement of $100 per work week, not to exceed $2,500."  Baltierra v. Advantage Pest Control Co., No. 14 CV 5917, 2015 WL 5474093, at *10 (E.D.N.Y. Sept. 18, 2015) (citation omitted); accord Inclan, 95 F. Supp. 3d at 501; see also 2010 N.Y. LAWS ch. 564 § 7, amending N.Y. LAB. LAW § 198(1-d).  By an amendment to the WTPA effective February 27, 2015, the law changed to allow employees to recover statutory damages of $250 dollars "for each work day that the violations occurred or continue to occur," not to exceed $5,000.  2014 N.Y. LAWS ch. 537 § 2, amending N.Y. LAB. LAW § 198(1-d); see also Zhang v. Red Mtn. Noodle House Inc., No. 15 CV 628, 2016 WL 4124304, at *6 (E.D.N.Y. July 5, 2016), report and recommendation adopted, 2016 WL 4099090 (E.D.N.Y. Aug. 2, 2016).  However, because plaintiff's employment ended prior to February 27, 2015, he may only recover based on the statutory damages available prior to this amendment.  Therefore, I find that plaintiff is entitled to $2,500 for wage statement violations.

9.  Pre-Judgment Interest

Plaintiff also requests and is entitled to prejudgment interest under the NYLL.

See N.Y. Lab. Law § 663; Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015) ("In contrast to the FLSA, the NYLL permits an award of both liquidated damages and prejudgment interest.").  "Prejudgment interest is calculated on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law."[13]  Fermin, 93 F. Supp. 3d at 49 (quoting Mejia v. East Manor USA Inc., No. 10 CV 4313, 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013) (internal brackets removed), report and recommendation adopted,  2013 WL 2152176 (E.D.N.Y. May 17, 2013)).

The statutory rate of interest is nine percent per annum.  N.Y. C.P.L.R. § 5004. Where damages were incurred at various times, interest may be calculated from a single reasonable intermediate date.  Id. § 5001(b).  The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest.  See Fermin, 93 F. Supp. 3d at 49; Wicaksono, 2011 WL 2022644, at *9.  I determine the midpoint of plaintiff's employment to be August 1, 2012.  I therefore respectfully recommend that prejudgment interest at the rate of nine percent per annum be awarded on his compensatory damages of $32,345.30 from August 1, 2012 to the date of the entry of judgment, which amounts to a per diem interest rate of $7.98 ($32,345.30 x .09/365).

### 10. Post-Judgment Interest

Plaintiff is also entitled to post-judgment interest under 28 U.S.C. § 1961(a). Section 1961 provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant

---

[13] Prejudgment interest is also unavailable for violations of the wage statement or wage notice provisions.  See N.Y. Lab. Law § 198(1-b), (1-d).

maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." Id. Thus, I respectfully recommend that plaintiff be awarded statutory post-judgment interest. See Fermin, 93 F. Supp 3d at 53 (finding that post-judgment interest is mandatory).

        11. Attorney's Fees and Costs

        As the prevailing party, plaintiff is entitled to recover reasonable attorney's fees and costs under both statutes. See 29 U.S.C. § 216(b), N.Y. LAB. LAW §§ 198, 663(1)). Plaintiff's Memorandum of Law does not include a fee application, but rather requests that attorney's fees and costs be determined at a later time. (Pl.'s Mem. at 3.) At the inquest hearing, plaintiff's counsel submitted an exhibit consisting of computer printouts of time records and a generic firm resume, which does not identify all attorneys who worked on this matter.[14] (See Time Records & Firm Resume, Exs. 3–5, filed Feb. 13, 2019, Dkt. No. 54.) This is not a sufficient fee application. Therefore, I respectfully recommend that plaintiff's request for attorney's fees and costs be denied at this time, with leave to re-file a complete application with support for counsel's hourly rates within thirty days of the date of Judge DeArcy Hall's decision on this report and recommendation.

**CONCLUSION**

        For the reasons stated above, I respectfully recommend that plaintiff's motion for a default judgment be granted as to Canela and Estrella Latina, but denied as to Del Caribe. In terms of damages, I respectfully recommend that plaintiff be awarded $66,991.64, consisting of $20,676.25 in unpaid minimum wage compensation, $7,568.55 in unpaid overtime compensation, $2,085 in unlawfully retained gratuities, $2,015.50 in unpaid spread of hours

---

[14] For example, there is an individual with the initials "TS" who billed upwards of forty hours on this matter and who is not identified or described in plaintiff's submission.

wages, $32,146.34 in liquidated damages, and $2,500 in statutory penalties for wage statement violations, as well as pre-judgment interest accruing from August 1, 2012 to the date of entry of judgment, and post-judgment interest.  I further recommend dismissing plaintiff's claims against Ramos and Del Caribe for failure to state a claim.  Finally, I respectfully recommend denying plaintiff's application for attorney's fees and costs at this time, with leave to refile a complete application within thirty (30) days of Judge DeArcy Hall's decision on this report and recommendation.

Any objections to this report and recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge DeArcy Hall and to my chambers within fourteen (14) days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).  Plaintiff is directed to serve copies of this report and recommendation on the defaulting defendants by regular mail, and to file proof of service within ten days of the date of this report and recommendation.

Respectfully submitted,

_____
        /s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
       March 8, 2019